IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED MINE WORKERS OF AMERICA, ) <br> INTERNATIONAL UNION, ) <br> 8315 Lee Highway, Fairfax, VA 22031, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> David Dye, Acting Assistant Secretary, ) <br> Mine Safety and Health Administration, ) <br> U.S. Department of Labor, ) <br> ) <br> Defendant. ) | Civil Action No. _____ |

## VERIFIED COMPLAINT

1. Plaintiff United Mine Workers of America ("UMWA") brings this action pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Local Civil Rule 65.1, and 28 U.S.C. 1651(a) seeking injunctive and declaratory relief. Plaintiff seeks a declaration that the Defendant Mine Safety and Health Administration ("MSHA") must take immediate action, including random checks of existing equipment and in-mine emergency-simulated training, to ensure that the self-contained self-rescuers coal miners rely upon to escape or survive after a mine emergency are reliable and that miners are effectively trained for their use in an emergency.

2. The UMWA is an unincorporated association and labor organization within the meaning of Section 2(5) of the Labor Management Reporting Act, 29

U.S.C. § 152(5). The UMWA is the collective bargaining agent of thousands of underground coal miners throughout the country.

3. MSHA is the agency charged with implementing, administering and enforcing the safety and health regulations applicable to the nation's mines.

4. Proper use of self-contained self-rescuers ("SCSR"s) has been a long and recurring problem within the coal industry. The training that must be provided to miners does not afford miners an opportunity to experience an SCSR as it will operate in an emergency.

5. There have been numerous problems with a number of different manufacturers' SCSR units not functioning properly.

6. In June, 1999, MSHA and the National Institute for Occupational Safety and Health ("NIOSH") convened a joint conference to study SCSR devices. Shortly thereafter, on July 7, 1999, MSHA issued an "Advance Notice of Proposed Rulemaking" and solicited responses to a number of specific questions. 64 Fed. Reg. 36632. It recognized that there were instances when SCSR units were not donned properly in an emergency. MSHA also articulated concerns about the reliability of SCSRs, as well as about whether the training was adequate and whether the units should be examined more frequently. Id.

7. In September, 2001, MSHA withdrew from its semi-annual regulatory agenda its proposed rulemaking on SCSR improvements. Nevertheless,

nothing had changed to improve SCSRs, miners' training on the devices, or their reliability between 1999 (when MSHA/NIOSH had the SCSR conference and MSHA published its proposed rule) and September 2001 (when the rulemaking effort was withdrawn).

8. Since 2001, there have been no meaningful advances in SCSR reliability.

9. In coal mine tragedies this year – including the Sago and Alma Aracoma disasters in West Virginia in January and the Darby No. 1 explosion in Kentucky on May 20, 2006 – underground coal miners who confronted an underground emergency and attempted to utilize a SCSR, were not able to use them in the intended manner, or to their intended potential.

10. MSHA issued an emergency temporary standard ("ETS") on March 9, 2006, 71 Fed. Reg. 12252, et seq., which includes a number of changes intended to assist miners successfully escape and survive after an emergency event. However, that ETS fails to provide for any testing of SCSR units to determine if the units are operating properly. The ETS also fails to provide for miners to experience emergency-like drills to ensure they will know how to use the SCSR units if they will have to don one in an emergency.

11. By written request, the UMWA asked the Acting Assistant Secretary of Labor for Mine Health and Safety to implement a comprehensive review of the reliability of self-contained self-rescuer units, and to enhance the training of all active miners in the use of SCSR breathing devices.

12. In his reply to the UMWA, the Acting Assistant Secretary of Labor for Mine Health and Safety indicated that MSHA will "evaluate the quality and adequacy" of the miners' training before the Sago disaster, and "make recommendations." He further asserts that MSHA has developed and "is implementing an action plan to address proper training on SCSRs and functionality of devices...[and that] Inspectors will place special focus on [training and drills in donning and exchanging SCSRs] during the regular inspection process as the new Emergency Temporary Standard (ETS) SCSR training requirements are implemented."

13. The Darby explosion occurred less than a week after the reply referenced in paragraph 12, above, was sent. Problems with the SCSRs at Darby were widely reported throughout, *inter alia*, the coal fields' newspapers. Miners throughout the country are concerned about whether the SCSR they carry will be able to protect them in an emergency.

14.   Since three miners died of asphyxiation at the Darby mine after MSHA sent its reply to the UMWA, MSHA has not responded further to the UMWA request nor has it done anything else to suggest it will require any random testing of SCSRs or training of miners on SCSRs in-mine, emergency-like conditions so that miners can learn how the SCSR will feel when SCSR units must be deployed in an emergency.

15.   Davitt McAteer, former-Administrator for MSHA (under President Clinton) and currently the lead investigator of the Sago disaster for the State of West Virginia, referencing problems with SCSRs at the Sago and Darby emergencies, suggested that random testing of 1% of SCSRs throughout the country be performed because "either the device has some problem or else the training has some problem."

16.   Coal mine operators that have performed voluntary spot checks on the SCSR units in use at their own coal mines have determined that some (and perhaps many) of the government-approved SCSR units that miners are trained to believe will provide a minimum of one hours' worth of oxygen in an emergency, in fact, suffer from substantial shortcomings in their reliability and the duration of available oxygen.

17.  Without any methodical checks on the reliability of SCSR units, and without hands-on, in-mine, emergency-like drills to train miners in the use of SCSR units, the miners Plaintiff represents are now, and will continue to be, exposed to potential injury and death by relying on equipment that has repeatedly failed miners who attempted to use SCSR units in a life-threatening emergency.

18.  Plaintiff avers that it has a reasonable likelihood for success on the merits of the complaint, especially given the tragic events of 2006 in which SCSR units repeatedly failed to protect miners from their noxious environment in multiple underground coal mine emergencies.

19.  There is a substantial potential that more miners will die due to faulty SCSRs, or the miners' inadequate training on the use of SCSRs. When interests are balanced, Plaintiff and those it represents will suffer more from denial of an injunction than Defendant will from its issuance.

20.  Plaintiff has no remedy at law.

WHEREFORE, the Plaintiff prays for the following:

1.  That this Court issue a permanent injunction to restrain and enjoin the Defendant, its employees, agents, and all others working in active concert and participation with them, from failing to require a) immediate and periodic random checks of self-contained self-rescuer units in use in coal mines (and replacements if

faulty SCSR units are discovered), and b) immediate and recurring hands-on, in-mine, emergency-like training for all underground coal miners with the use of simulated units so miners may physically experience the labor of breathing while wearing an SCSR; and c) operators to maintain and submit to MSHA an inventory of their SCSR units, providing specific details that will enable the government to quickly respond to future problems with SCSR units.

2. That this Court grant such other and further relief as deemed proper.

Respectfully submitted,

*/s/ Judith Rivlin*

GRANT CRANDALL
JUDITH RIVLIN, Bar # 305797
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031-2215
(703) 208-7180
COUNSEL FOR UNITED MINE
WORKERS OF
AMERICA

7

| | |
|---|---|
| **COMMONWEALTH OF VIRGINIA** | ) |
| | ) SS. |
| **COUNTY OF FAIRFAX** | ) |

## VERIFICATION

This day, Dennis O'Dell personally appeared before me, and after first being duly sworn, deposes and states that he is the Administrator of Occupational Health and Safety Department of United Mine Workers of America, International Union, which hereby moves for a Preliminary Injunction in the matter *United Mine Workers of America v. David Dye, Acting Assistant Secretary of Labor, and Mine Safety and Health Administration*, and that as such, he is authorized to execute this Verification on its behalf with regard to the Verified Complaint and Motion for Preliminary Injunction of UMWA; that he has read the Verified Complaint and Motion for Preliminary Injunction of UMWA and knows the contents thereof; and that the facts set forth therein are true to the best of his knowledge, information and belief.

_____
Dennis O'Dell

Given under my hand and seal this
7th day of June, in the year 2006.

_____
Notary Public

LAURA MAE ANDERSON
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JAN. 31, 2008