IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED MINE WORKERS OF AMERICA,<br>INTERNATIONAL UNION,<br>8315 Lee Highway, Fairfax, VA 22031,<br><br>        Plaintiff,<br>v.<br><br>David Dye, Acting Assistant Secretary,<br>Mine Safety and Health Administration,<br>U.S. Department of Labor,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR PRELIMINARY INJUNCTION

1. Plaintiff United Mine Workers of America ("UMWA") brings this action pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Local Civil Rule 65.1, and 28 U.S.C. 1651(a) seeking injunctive and declaratory relief. Plaintiff seeks a declaration that the Defendant Mine Safety and Health Administration ("MSHA") must take immediate action, including random checks of existing equipment and in-mine emergency-simulated training, to ensure that the self-contained self-rescuers coal miners rely upon to escape or survive after a mine emergency are reliable and that miners are effectively trained for their use in an emergency.

2. The UMWA is an unincorporated association and labor organization within the meaning of Section 2(5) of the Labor Management Reporting Act, 29

U.S.C. § 152(5). The UMWA is the collective bargaining agent of thousands of underground coal miners throughout the country.

3. MSHA is the agency charged with implementing, administering and enforcing the safety and health regulations applicable to the nation's mines.

4. Proper use of self-contained self-rescuers ("SCSR"s) has been a long and recurring problem within the coal industry. In 1987, finding "that miners are exposed to a grave danger when they enter underground mines without being prepared to properly use SCSR devices provided for their protection in the event of a fire or explosion," the Secretary of Labor then increased the miners' training in self-contained self-rescuers to require for the first time "hands-on" training. However, this training only requires classroom training, not training in simulated emergency conditions. Moreover, the training does not afford miners an opportunity to experience an SCSR as it will operate in an emergency. This compromises the effectiveness of the training: some approved SCSR units feel very hot to the lips when a miner uses it, to the point of causing blisters even when it is providing needed oxygen, and all units create resistance. See O'Dell affidavit, attached Exhibit 5.

5. There have been numerous problems with a number of different manufacturers' SCSR units not functioning properly. In particular, MSHA issued

press releases about such problems in at least 1997, 1998, and 2000. Attached Exhibit 1.

6. In June, 1999, MSHA and the National Institute for Occupational Safety and Health ("NIOSH") convened a joint conference to study SCSR devices. Shortly thereafter, on July 7, 1999, MSHA issued an "Advance Notice of Proposed Rulemaking" and solicited responses to a number of specific questions. 64 Fed. Reg. 36632. It recognized that there were instances when SCSR units were not donned properly in an emergency. MSHA also articulated concerns about the reliability of SCSRs, as well as about whether the training was adequate and whether the units should be examined more frequently. Id.

7. In September, 2001, MSHA withdrew from its semi-annual regulatory agenda its proposed rulemaking on SCSR improvements.[1] Nevertheless, nothing had changed to improve SCSRs, miners' training on the devices, or their reliability between 1999 (when MSHA/NIOSH had the SCSR conference and MSHA published its proposed rule) and September 2001 (when the rulemaking effort was withdrawn).

8. Since 2001, there have been no meaningful advances in SCSR reliability.

---

[1] In withdrawing the proposed rulemaking effort, MSHA cited " resource constraints and changing safety and health regulatory priorities."

9. In coal mine tragedies this year – including the Sago and Alma Aracoma disasters in West Virginia in January and the Darby No. 1 explosion in Kentucky on May 20, 2006 – underground coal miners who confronted an underground emergency and attempted to utilize a SCSR, were not able to use them in the intended manner, or to their intended potential. For example, at the Sago Mine, survivor Randal McCloy stated that four of the units did not function at all (McCloy letter attached as Exhibit 2), and NIOSH and MSHA testing has indicated that the SCSR units that were used at Sago had 25 to 75 percent of their capacity remaining, even though miners perished without having exhausted the units that were activated. Conflicting reports have been published about how long Paul Ledford, the sole survivor of the Darby mine emergency, was able to use his SCSR. See, e.g. Courier Journal, May 22, 2006, attached as Exhibit 6.

10. MSHA issued an emergency temporary standard ("ETS") on March 9, 2006, 71 Fed. Reg. 12252, et seq., which includes a number of changes intended to assist miners successfully escape and survive after an emergency event. However, that ETS fails to provide for any testing of SCSR units to determine if the units are operating properly. The ETS also fails to provide for miners to experience emergency-like drills to ensure they will know how to use the SCSR units if they will have to don one in an emergency. MSHA's compliance guide on the ETS

4

merely "recommends" that SCSR training be conducted in the mine or a controlled environment that simulates mine emergency conditions.

11. By written request, shortly after the Randall McCloy information about the four SCSR unit failures was widely-publicized, the UMWA asked the Acting Assistant Secretary of Labor for Mine Health and Safety to implement a comprehensive review of the reliability of self-contained self-rescuer units, and to enhance the training of all active miners in the use of SCSR breathing devices. See attached Exhibit 3.

12. In his reply to the UMWA, the Acting Assistant Secretary of Labor for Mine Health and Safety indicated that MSHA will "evaluate the quality and adequacy" of the miners' training before the Sago disaster, and "make recommendations." He further asserts that MSHA has developed and "is implementing an action plan to address proper training on SCSRs and functionality of devices...[and that] Inspectors will place special focus on [training and drills in donning and exchanging SCSRs] during the regular inspection process as the new Emergency Temporary Standard (ETS) SCSR training requirements are implemented." Attached Exhibit 4.

13. The Darby explosion occurred less than a week after the reply referenced in paragraph 12, above, was sent. Problems with the SCSRs at Darby

5

were widely reported throughout the coal field newspapers. Miners throughout the country are concerned about whether the SCSR they carry will be able to protect them in an emergency. Attached Exhibit 5.

14. Since three miners died of asphyxiation at the Darby mine after MSHA sent its reply to the UMWA, MSHA has not responded further to the UMWA request nor has it done anything else to suggest it will require any random testing of SCSRs or training of miners on SCSRs in-mine, emergency-like conditions so that miners can learn how the SCSR will feel when SCSR units must be deployed in an emergency.

15. Davitt McAteer, former-Administrator for MSHA (under President Clinton) and currently the lead investigator of the Sago disaster for the State of West Virginia, referencing problems with SCSRs at the Sago and Darby emergencies, suggested that random testing of 1% of SCSRs throughout the country be performed because "either the device has some problem or else the training has some problem." Attached Exhibit 7.

16. Coal mine operators that have performed voluntary spot checks on the SCSR units in use at their own coal mines reveal substantial shortcomings in the capabilities of virtually all of the government-approved SCSR units that miners are

trained to believe will provide a minimum of one hours' worth of oxygen in an emergency. Attached Exhibit 5.

17. Without any methodical checks on the reliability of SCSR units, and without hands-on, in-mine, emergency-like drills to train miners in the use of SCSR units, the miners Plaintiff represents are now, and will continue to be, exposed to potential injury and death by relying on equipment that has repeatedly failed miners who attempted to use SCSR units in a life-threatening emergency.

18. Plaintiff avers that it has a reasonable likelihood for success on the merits of the complaint, especially given the tragic events of 2006 in which SCSR units repeatedly failed to protect miners from their noxious environment in multiple underground coal mine emergencies.

19. There is a substantial potential that more miners will die due to faulty SCSRs, or the miners' inadequate training on the use of SCSRs. When interests are balanced, Plaintiff and those it represents will suffer more from denial of an injunction than Defendant will from its issuance.

20. Plaintiff has no remedy at law.

WHEREFORE, the Plaintiff prays for the following:

1. That this Court issue a preliminary and permanent injunction to restrain and enjoin the Defendant, its employees, agents, and all others working in

7

active concert and participation with them, from failing to require a) immediate and periodic random checks of self-contained self-rescuer units in use in coal mines (and replacements if faulty SCSR units are discovered), and b) immediate and recurring hands-on, in-mine, emergency-like training for all underground coal miners with the use of simulated units so miners may physically experience the labor of breathing while wearing an SCSR; and c) operators to maintain and submit to MSHA an inventory of their SCSR units, providing specific details that will enable the government to quickly respond to future problems with SCSR units.

  2. That this Court grant such other and further relief as deemed proper.

            Respectfully submitted,

            */s/ Judith Rivlin*
            GRANT CRANDALL
            JUDITH RIVLIN, Bar # 305797
            United Mine Workers of America
            8315 Lee Highway
            Fairfax, VA 22031-2215
            (703) 208-7180
            COUNSEL FOR UNITED MINE
            WORKERS OF
            AMERICA

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION, 8315 Lee Highway, Fairfax, VA 22031, <br><br> Plaintiff, <br> v. <br><br> David Dye, Acting Assistant Secretary, Mine Safety and Health Administration, U.S. Department of Labor, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No._____ |

## POINTS AND AUTHORITIES IN SUPPORT OF UMWA MOTION FOR PRELIMINARY INJUNCTION

The Federal Mine Safety and Health Act (the Mine Act), 30 U.S.C. § 801 et seq., addresses safety and health in the nation's mines. Pursuant to Section 101(a) and (b) of the Act, 30 U.S.C. § 811(a) and (b), the Secretary is charged with developing and promulgating health and safety standards in coal and other mines, and has the authority to promulgate emergency temporary standards. The Secretary also enforces promulgated final rules. Section 104 of the Act; 30 U.S.C. § 814.

### Facts

Self-contained self-rescuers ("SCSRs") are breathing devices that the Mine Safety and Health Administration ("MSHA") and National Institute of

1

Occupational Safety and Health ("NIOSH") approve, and that operators must provide to underground coal miners (and underground visitors) for breathing assistance when the underground atmosphere is compromised, such as after a fire or explosion.[1] The rule governing SCSRs is set forth at 30 C.F.R. § 75.1714. To be approved, SCSR units must be "adequate to protect...for 1 hour or longer." Id. The regulations also impose training requirements, but do not require miners to experience what it is really like to breathe through an SCSR. There are different kinds of MSHA and NIOSH-approved SCSRs: some provide chemicals that create oxygen, while others directly provide oxygen on demand.

The coal industry has experienced repeated problems with the proper use of SCSR units. In 1987, finding "that miners are exposed to a grave danger when they enter underground mines without being prepared to properly use SCSR devices provided for their protection in the event of a fire or explosion," the Secretary of Labor then improved the miners' training in self-contained self-rescuers by requiring "hands-on" training. However, the training only requires *classroom* training, not training in simulated emergency conditions.

---

[1] MSHA described self-contained self-rescuers as "closed circuit breathing apparatuses that provide a source of oxygen and greatly increase a person's chance of surviving a mine emergency involving an irrespirable atmosphere. In the event of such a mine emergency, the SCSR device provides miners with the last protection allowing escape." 52 Fed. Reg. 24374 (June 30, 1987).

2

Following a 1999 conference that MSHA and NIOSH had organized to study SCSRs, MSHA determined there was a problem with SCSR units not being donned properly in emergencies. MSHA also articulated concerns about the reliability of SCSRs, as well as about whether the training was adequate and whether the units should be examined more frequently. These concerns motivated MSHA to propose rulemaking; it issued an Advance Notice of Proposed Rulemaking. 64 Fed. Reg. 36632. Some two years later, after a change in leadership at MSHA, the Agency withdrew its proposed rulemaking on SCSRs, through its semi-annual regulatory agenda of September 2001. In explaining the change, MSHA cited budget restraints and changing regulatory priorities, but did not even suggest there had been any intervening changes that indicated the SCSR problems had diminished. In fact, there had been no such intervening improvements. Nor have there been any meaningful advances in SCSR reliability since 2001.

In multiple coal mine tragedies this year – specifically including the Sago disaster in West Virginia on January 2, 2006, and the Darby No. 1 explosion in Kentucky on May 20, 2006 – underground coal miners who confronted an underground emergency and attempted to utilize a SCSR, were not able to use them in the intended manner, or to their intended potential. They died from carbon

3

monoxide poisoning. At the Sago Mine, survivor Randal McCloy stated that four of the units did not function at all, and NIOSH and MSHA testing has indicated that the self-contained self-rescuer units that were used at Sago had 25 to 75 percent of their capacity remaining, even though miners perished without having exhausted the units that were activated. Conflicting reports have been published about whether Paul Ledford, the sole survivor of the Darby mine emergency, was able to use his SCSR, and for how long it functioned. Two miners killed at the Alma Aracoma mine, one of whom used an SCSR, also died of carbon monoxide poisoning. Moreover, the voluntary testing that some operators have performed on their own units, albeit government-approved, confirms that the SCSR units provided to miners are <u>not</u> meeting the regulatory standard, even though miners have been taught to expect that the SCSRs they may have to use will offer them at least an hour's worth of life-saving oxygen.

Though MSHA issued an emergency temporary standard ("ETS") on March 9, 2006, 71 Fed. Reg. 12252, et seq., which includes a number of changes intended to assist miners successfully escape and survive after an emergency event, it fails to provide for any testing of SCSR units to determine if the units are operating properly. The ETS also fails to provide for miners to experience emergency-like

4

drills to ensure they will know how to use the SCSR units if they would have to don one in a real emergency.

Through the first five months of 2006, there have been an increased number of underground coal mine tragedies, resulting in the deaths of 33 miners. These include several multi-fatal accidents. At least fourteen of these coal miners died from carbon monoxide poisoning in accidents in which miners tried to use SCSRs but where the units could not be utilized, in whole or in part.[2]

### Applicable Legal Standard

For a preliminary injunction, the Court considers four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff faces irreparable harm if the injunction is not granted; (3) whether granting the injunction will substantially injure the opposing party; and (4) whether the public interest would be furthered by issuing the injunction. AFL-CIO v. Chao, 297 F. Supp. 2d 155, 161 (D.D.C 2003)(citing, *inter alia*, Davenport v. International Brotherhood of Teamsters, AFL-CIO, 166 F.3d 356, 360 (D.C. Cir.

---

[2] Randal McCloy, the sole survivor among the 13 miners trapped underground at the Sago mine after the explosion on January 2, 2006, stated that "at least four of the rescuers did not function." Complaint Par. 9. Eleven of the 12 miners who were killed at Sago died from carbon monoxide poisoning. Similarly, Paul Ledford -- the only miner to successfully evacuate the Darby No. 1 mine after it experienced an explosion on May 20, 2006 and where three others died in the mine from carbon monoxide poisoning -- told his brother that his SCSR "worked for only five minutes." Id. We note that it was subsequently reported that Mr. Ledford told MSHA "that his self-contained respirator functioned throughout his ordeal" contrary to what his brother had previously conveyed. Id.

5

1999). The factors are interrelated and the Court should balance them against each other. Davenport, 166 F. 3d at 360-61. The threshold for the first factor, likelihood of success, varies according to the Court's assessment of the other factors. New Mexico v. Richardson, 39 F. Supp. 2d 48, 50 (D.D.C. 1999).

**Argument**

### Balancing the relevant factors, the injunctive relief should issue.

In its statement of findings and declaration of purpose of the Mine Act, Congress declared that:

> (a) the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource - the miner;
> (b) deaths and serious injuries from unsafe and unhealthful conditions and practices in the coal or other mines cause grief and suffering to the miners and to their families;
> (c) there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the nation's coal or other mines in order to prevent death and serious physical harm...30 U.S.C. §801.

Consistent with these purposes, the Mine Act requires the Secretary of Labor to:

> ...develop, promulgate, and revise as may be appropriate, improved mandatory health or safety standards for the protection of life and prevention of injuries in coal or other mines. 30 U.S.C. §801(a)(1).

6

The Secretary also has the authority to inspect mines to ensure that regulations are being followed. 30 U.S.C. §§ 811; 814.

The urgency of the need for a) immediate and dramatic improvements to the quality of miners' training on SCSRs and b) immediate routine spot checks on SCSRs presently in use at coal mines to determine if they are meeting the regulatory minimum, is demonstrated by the many coal miners' deaths suffered in the first five months of 2006. The evidence shows that SCSR units are not functioning with sufficient reliability, or miners' training is inadequate, or both. Coal miners are dying from carbon monoxide poisoning when SCSR units are not functioning properly or fully.

We cannot afford the luxury of more study as MSHA's reply to the UMWA request seems to suggest the Agency plans to pursue. Moreover, while the ETS provides training improvements insofar as it provides for greater frequency in SCSR training, it does not require any hands-on, in-mine, emergency-like training so that miners may physically experience the labor of breathing while wearing an SCSR training in emergency-like conditions. Without such a qualitative change the training is insufficient to prepare miners for using a SCSR in the next emergency.

Coal miners toil underground in an inherently dangerous environment.[3] They must be able to depend on SCSRs when emergencies strike. They now have bona fide reasons to worry about whether they will be able to successfully don and use an SCSR, and wonder about how long it might provide oxygen even if it begins to function. The Secretary's failure to take more decisive and more responsive action in the face of the compelling evidence amounts to arbitrary and capricious conduct. See, e.g. In re: International Chemical Workers Union, 958 F. 2d 1144 (D.C. Cir. 1992).

1. Based on the Defendant's decision failure to take more decisive and more responsive action in the face of the compelling evidence, Plaintiffs have a substantial likelihood of success on the merits.

2. Given that death can result if miners do not have the use of functional SCSRs, and that the reliability of such units has been placed in substantial doubt by the well-publicized accounts of the only two survivors of two recent multi-fatal mine tragedies, which survivors indicated that some SCSRs did not function properly in mine emergencies in which 14 miners died from carbon monoxide poisoning, as well as other public reports about SCSR failures, as well as the

---

[3] For example, when it promulgated an emergency temporary standard, in 1987, that required "hands-on" training on SCSR units for all persons entering underground mines, MSHA noted that underground coal mines constitute a "high-hazard work environment, [where] the danger of a fire or explosion is ever present." 52 Fed. Reg. 24374 et. seq.

8

operators' own voluntary reviews of their SCSRs showing that they do not offer the requisite protection even in non-emergency informal tests, Plaintiffs will suffer irreparable harm if the relief is not granted.

3. Defendant is charged with promulgating and enforcing safety and health rules in the nation's mines. It will not be harmed by granting the relief sought.

4. In view of all of the above, the public interest would favor granting the relief sought.

Respectfully submitted,

*Judith Rivlin*
JUDITH RIVLIN, Bar # 305797
GRANT CRANDALL
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031-2215
(703) 208-7180
COUNSEL FOR UNITED MINE
WORKERS OF
AMERICA

9